Morris Aarons, J.
Subsequent to May 31,1968, the petitioner (landlord) leased a decontrolled apartment in a multiple dwelling in the County of New York to the respondent (tenant) at a monthly rental of $320. The subject apartment, prior to being vacated by the former tenant thereof, was leased at the rate of $240 a month. The lease executed between the parties in this proceeding was for a period of two years.
As a result of the residential Rent Stabilization Law (Administrative Code of City of New York, § YY51-1.0 et seq.), signed by Mayor John V. Lindsay on May 6, 1969, the landlord tendered respondent an extension of his lease to three years with an option to cancel after two years. This proposed lease included a provision for rental at a rate of $300 per month, or 25% above the rent charged on May 31, 1968. Respondent refused the offer. In resisting this proceeding, the respondent contends that the landlord is bound by the two-year term of his original lease and an increase of only 15% (or $276 per month); that the landlord may not demand the 25% increase allowable under a three-year lease without tenant’s consent.
Landlord contends that under the code promulgated by the Rent Stabilization Association (of which he is a member), pursuant to provisions of the Rent Stabilization Law, landlord has a choice of extending the prior entered two-year lease to a three-year lease with a 25% increase in rental with the right to the tenant to cancel after two years.
Landlord relies upon the code as written and a supporting-letter submitted by counsel for the Rent Stabilization Association. The tenant relies upon a booklet published by the Housing and Development Administration and a supporting letter from the Assistant Administrator of the Housing and Development Administration.
The Rent Guidelines Board, established pursuant to the Rent Stabilization Law, created the following guidelines for leases on vacant apartments (Order No. 1): “ the permissible increases on any housing accommodation covered by this law which becomes vacant shall be 15% on a full two-year lease and 25% on a full three-year lease, until July 1, 1970.”
The code established and adopted by the Real Estate Industry Stabilization Association under the 1969 act appears to have been accepted by the Housing and Development Administration in accordance with section YY51-6.0 (subd. b, par. [2]).
Section 20 of this code provides 1 ‘ where a vacancy lease for an initial term of less than three full years was made effective after May 31, 1968 and prior to the acceptance of this Code by the Housing and Development Administration, the owner must *332 extend the term of .such lease to a full three-year period in order to qualify for the maximum increase permitted by the RSL for vacancy leases at least three years. In the event that an owner shall extend such a lease, the tenant must be given the option to cancel the same at the end of the original initial term thereof.” Under the reading of the code, it would appear that the landlord makes the choice, not the tenant.
The booklet published for tenants by the Housing and Development Administration provides in paragraph 2 (b) that “ On leases for new tenants renting vacant apartments after May 31,1968 the permissible increases over the rent charged on May 31, 1968 are: 10% for a one-year lease, 15% for a full two-year lease, and 25% for a full three-year lease * * * However, if a vacancy lease was made between June 1, 1968 and June 11,1969 for less than three years, the owner may collect up to the maximum allowable for a three-year vacancy lease (25%) provided, with the tenant’s consent, the owner extends the lease to a three-year lease. The tenant whose lease is so extended must be given the right to cancel the lease at the end of the original term. ’ ’ (Italics supplied.)
The code, however, conspicuously omits the reference to any tenant’s consent. The question arises as to whether the booklet provision is intended to require tenant’s consent to the increase of the term to three years at 25%; or is intended to mean that the tenant shall have the right, where the landlord demands an extension to a three-year lease and 25%, to cancel the lease if tenant does not wish to accede to the three years.
Throughout the code and statute, a distinction is made between a renewal lease and a vacancy lease. This is apparent in section 23 of the code, under the heading “ Tenant’s Rights and Obligations ” where it provides: “ A) The right of selection of a two-year or three-year term of a renewal lease shall be at the option of the tenant * * * B) The length of term of a vacancy lease shall be by agreement of the owner and tenant.” (Italics supplied.)
It is apparent that the Rent Stabilization Association and the Housing and Development Administration disagree on the construction of the code and the act. An .ambiguity clearly does exist and the need for clarification is obvious.
However, it is encumbent upon the court to resolve this ambiguity in this case at bar. A basic consideration in construing the intent of a statute is the cause and necessity for it — the general spirit and purpose underlying its enactment. Any construction of the law should further the object sought to be attained (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §§ 95, 96). *333 Section 341 (McKinney’s Statutes) says, “ It is a general rule that statutes designed to promote the public good will receive liberal construction ’ ’.
The court, in considering the fixation of rent, must guide itself by the intent of the Legislature, absent any evidence relating to a fixed determination in the statute. Section Y Y 51-1.0 of the Administrative Code succinctly sets forth such intent in the findings of the City Council of a serious public emergency existing in housing within the City of New York. The Council further found that because of a continued acute shortage of dwellings, 1‘ a serious threat to the public health, safety, and welfare” would result unless “ speculative, unwarranted, and abnormal increases in rent ” are prevented, and “ exactions of unjust, unreasonable, and oppressive rents and rental agreements for apartments not subject to rent regulation” are prevented.
The intent is clear. In light of this intent, I am constrained to decide the issue before me in favor of the tenant. I find that since the original lease in question provided for a two-year term, the landlord cannot force upon such tenant without tenant’s consent a lease for a longer term even if the tenant would have the right to cancel after the expiration of two years. The monthly rent is hereby established as $240 plus an increase of 15%, or $276. The landlord is entitled to rent for the month of September, 1969. Tenant is entitled to a credit of $352, as the total of overpayments of $44 a month since January, 1969, to and including August, 1969. This sum of $352 should be divided by the number of months remaining under the lease commencing with September, 1969, and an amount equal to the result deducted from each month’s payment of the rental until the end of the lease.