Arnold L. Fein, J.
In this CPLR article 78 proceeding three tenant petitioners seek review of three opinions of respondent Conciliation and Appeals Board (CAB) concerning the right of their respective landlords unilaterally to extend two-year leases, entered into after May 31, 1968 and before May 12, 1969, to three-year leases. All three apartments came under the Rent Stabilization Law of 1969 (RSL) (Administrative Code of City of New York, ch. 51, tit. YY; added by Local Laws, 1969, No. 16 of City of New York) which established a rent formula for renewal leases and new leases of vacant apartments, using the May 31, 1968 rent as the base rent.
Subdivision d of section YY51-5.0 of the RSL authorizes “ rent increases upon renewal leases or new tenancy * * * at a level of fair rent increase over the rental charged on May thirty-first, nineteen hundred sixty-eight, but not in excess of ten per cent for a two year lease and fifteen per cent for a three year lease * * * except as hereinafter -provided with respect- to a new tenancy.” - Subdivision e provides: “ Any housing accommodation * * # which becomes vacant ’ ’ may be charged an additional 5%, or a total of 15% on two-year leases, and a further 5% or a total of 25% on three-year leases.
All of the petitioners signed two-year leases prior to the enactment of the Rent Stabilization Law. Petitioner Klein (respondent’s Opn. No. 31), whose two-year lease rent was in excess of 15% of the base rent but less than 25%, was offered a third year on the lease at the same rent provided in the lease. Petitioner Reed’s (respondent’s Opn. No. 63) two-year lease rent was in excess of 25%. His landlord extended the lease a year and rolled the rent back to 25% above the base rent. Petitioner Jaccoma’s (respondent’s Opn. No. 68) two-year lease rent was in excess of 15% but below 25%. His landlord offered a third year on the lease at 25% of the base rent. Each petitioner rejected the third year addition to his lease, and appealed to the CAB, seeking a rent rollback to 15% above the base rent, relying upon two published interpretations of the Housing and Development Administration. Respondent ruled that each *331 landlord had the unilateral right to extend the lease for an additional (third) year at a rental 25% higher than the base rent, for the entire period of the lease, with the proviso that the rent could not exceed that set forth in the lease, and that tenant had the option of canceling at the end of two years. The result was to increase the maximum rent for a two-year lease to 25% over the base rent, not 15% over the base rent.
CAB relied on section 20 (subd. A) of the Rent Stabilization Code, which states: ‘ ‘ However, where a vacancy lease for an initial term of less than three full years was made effective after May 31, 1968 and prior to the acceptance of this Code by the Housing and Development Administration, the owner must extend the term of such lease to a full three year period in order to qualify for the maximum increase permitted by the RSL for vacancy leases at least three years. In the event that an owner shall extend such a lease, the tenant must be given the option to cancel the same at the end of the original initial term thereof.”
In its Opinion No. 31, in petitioner Klein’s case, the CAB ruled with respect to code section 20(A): “ This section applies only to leases made effective after May 31, 1968 and before the Code became effective: that is, it applies only to leases which were made at a time when the owner did not know that a Rent Stabilization Law and Code of the Association would later be adopted and retroactively applied to a vacancy lease made by him. Sad the owner known that this would come to pass, he might ha/ue taken steps to protect his interest. He might have demanded a three year lease and thereby have obtained the maximum increase allowable. But since he lacked such knowledge, Section 20(A), by way of compensation, provides that in computing how far, if at all, the rent under his vacancy lease should be reduced * # * the owner will be granted the maximum increase permissible for a three year vacancy lease provided he extends the lease to a full three year term and gives the tenant the option to cancel at the end of the original term.” (Emphasis supplied.)
Although this is not an unreasonable interpretation of section 20(A) of the code, it contravenes the law. (RSL, § YY51-5.0, subds. d and e, quoted supra.) The plain meaning of these sections is to limit the increase to 15% on two-year leases and 25% on three-year leases, with respect to vacant accommodations. There is no provision in the RSL permitting a landlord unilaterally to increase the maximum rent on a two-year lease by extending the lease to three years without tenant’s consent. The law is very clear that there is a distinction between a *332 two- and three-year lease, and there is no latitude as to the rents which may be charged. Moreover, with respect to approval of the code, the statute (§ YY51-6.0, subd. c) states:
‘1 A code shall not be approved hereunder unless it appears to the housing and development administration that such code * * * (4) includes provisions requiring members to grant a two or a three year lease at the option of the tenant and which also requires members to grant a one year renewal lease upon the request of a tenant ” (emphasis supplied).
To the extent that section 20(A) of the code and the CAB opinions under review are contrary to the BSL, the underlying law, they must fall. It is no answer to say that the code was adopted by the Beal Estate Industry Stabilization Association (Association), and approvéd by the Housing and Development Administration (HDA). It is noteworthy that the HDA has at least three times officially stated its position that, absent tenant’s consent, “the two year 15 percent vacancy rate applies.” (“Understanding Tour Bights as a Tenant Under the New Bent Stabilization Law,” Housing & Development Administration, Sept., 1969; Letter of Sept. 9,1969, HDA to Bent Stabilization Assn.; letter of Aug. 4, 1970, HDA to tenant, re CAB Dec. No. 31.) The HDA is the agency designated by the law 1 ‘ to promulgate such rules and regulations as it may deem necessary for the effective implementation of this law.” (BSL § YY51-4.0, subd. c.)
The fact that HDA has approved the code and taken no action with respect to the CAB opinions with which it disagrees is immaterial (Berfond v. Hoffman, 61 Misc 2d 330; Hammond v. Cohen Bros. Realty & Constr. Corp., N. Y. L. J., June 22, 1970, p. 15, col. 1). The court respectfully disagrees with the holding in Village Towers Co. v. Berelson (N. Y. L. J., June 16, 1970, p. 16, col. 4 [Civ. Ct., N. Y. County]), relied on by respondent CAB. Whatever the motives of landlords and tenants who entered into vacancy leases between June 1, 1968 and the date of acceptance of the code by HDA, BSL clearly limits rent increases for such accommodations, during that period, to 15% for two-year leases and 25% for three-year leases, and makes no provision for unilateral extension of leases from two to three years by landlords. To the extent that it is thought necessary to “ protect ” or provide “ compensation ” to landlords who could not anticipate either the legislation or the code, the remedy is by appeal to the Legislature (the City Council), not by an attempt to amend the BSL through the device of a stabilization code section or a CAB interpretation.
*333 Petition is granted. The determinations of the CAB which permitted the landlords of petitioners to extend their leases for a third year, and permitted the collection of rents in excess of 15% above the rent charged for petitioners’ apartments on May 31, 1968, are annulled. Respondent CAB is directed to take appropriate action to limit the rents for petitioners’ apartments for the two-year period of such leases to a maximum of 15% above the rents charged on May 31, 1968.